**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 7, 2013

No. 12-20529

Lyle W. Cayce
Clerk

ROLANDO SERNA,

Plaintiff - Appellant

v.

LAW OFFICE OF JOSEPH ONWUTEAKA, P.C.; JOSEPH ONWUTEAKA;
SAMARA PORTFOLIO MANAGEMENT, L.L.C.,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, HAYNES, and GRAVES, Circuit Judges.

HAYNES, Circuit Judge:

Rolando Serna appeals the district court's grant of summary judgment for the Law Office of Joseph Onwuteaka, P.C., Joseph Onwuteaka, and Samara Portfolio Management, L.L.C. (collectively, "the Defendants"[1]), dismissing his claim against the Defendants for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. The district court concluded that Serna's claim was untimely because he filed suit against Onwuteaka more than a year after the underlying debt-collection suit was filed, which is outside the FDCPA's limitations period. Because we conclude that the alleged violation of 15 U.S.C.

---

[1] Only Onwuteaka individually filed an appellee's brief.

No. 12-20529

§ 1692i(a)(2) arose only after Serna received notice of the underlying debt-collection suit, we REVERSE and REMAND.

## FACTUAL & PROCEDURAL HISTORY

Serna defaulted on a promissory note he obtained through the Internet from First Bank of Delaware.[2] Samara Portfolio Management purchased the loan. Seeking to recover from Serna on the loan, Onwuteaka filed an original petition in the Harris County Justice of the Peace Court on July 6, 2010, and served Serna on August 14, 2010.[3] Onwuteaka obtained a default judgment, on which he attempted to collect.

On August 12, 2011, Serna filed an original complaint in the United States District Court for the Southern District of Texas, alleging that because he neither resided nor entered the loan agreement in Harris County, the Defendants' suit violated the FDCPA's venue requirement. *See* § 1692i(a)(2). He attached to it his application to proceed *in forma pauperis* ("IFP"), which the district court denied on August 15, 2011. On August 18, 2011, Serna refiled his complaint, which was identical to the original complaint he filed six days earlier, this time paying the required fee. Thereafter, both parties moved for summary judgment. The magistrate judge granted the Defendants' motion, concluding that Serna's suit was untimely under the FDCPA's one-year limitations period because he filed his complaint more than one year after Onwuteaka filed his

---

[2] Through this promissory note, Serna financed $2600 at an annual percentage rate of 99.24%.

[3] The lawsuit was filed by Onwuteaka and his law firm on behalf of Samara Portfolio Management, which Onwuteaka owns.

No. 12-20529

petition in the underlying debt-collection action.[4] The magistrate judge entered

final judgment for the Defendants,[5] and this appeal followed.

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo*, applying the same

standard as the district court. *Gen. Universal Sys. v. HAL, Inc.*, 500 F.3d 444,

448 (5th Cir. 2007). Summary judgment is appropriate if the moving party can

show "that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The evidence

must be viewed in the light most favorable to the non-moving party. *United Fire*

*& Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006).

## DISCUSSION

Congress enacted the FDCPA "to eliminate abusive debt collection

practices by debt collectors, to insure that those debt collectors who refrain from

using abusive debt collection practices are not competitively disadvantaged, and

to promote consistent State action to protect consumers against debt collection

abuses." § 1692(e). The statute provides that a debt collector seeking to recover

a consumer debt must "bring such action only in the judicial district or similar

legal entity . . . in which such consumer signed the contract sued upon[] or . . . in

which such consumer resides at the commencement of the action."[6] § 1692i(a)(2).

A violation of the FDCPA renders a debt collector potentially liable for actual

---

[4] The magistrate judge also granted Serna's motion for summary judgment concerning the Defendants' counterclaims, but denied the motion to the extent that Serna sought relief for his affirmative claims. Because neither party contests this decision, we decline to review the district court's disposition of Serna's motion for summary judgment. *See Douglas W. ex rel. Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 210 n.4 (5th Cir. 1998) ("[F]ailure to provide any legal or factual analysis of an issue on appeal waives that issue.").

[5] Pursuant to 28 U.S.C. § 636(c), the parties consented to a magistrate judge conducting proceedings in this matter, including the entry of final judgment.

[6] For purposes of this appeal, Onwuteaka does not dispute his status as a debt collector.

damages, additional damages up to $1,000, and costs and attorneys' fees incurred. 15 U.S.C. § 1692k(a). To enforce a violation of the FDCPA, an action "may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, *within one year from the date on which the violation occurs*." § 1692k(d) (emphasis added).

Here, in order to determine whether Serna's action was "brought . . . within one year from the date on which the [alleged] violation [of § 1692i(a)(2)] occur[ed]," *see* § 1692k(d), we must interpret § 1692i(a)(2)'s reference to "bring such action" to determine when the underlying debt-collection suit was brought. The parties agree that Onwuteaka filed the debt-collection suit against Serna on July 6, 2010, and served Serna on August 14, 2010. They disagree concerning the legally relevant event that constitutes the violation that encompasses the "bring[ing of] such action" under § 1692i(a)(2). Indeed, reasonable minds could differ—as they do here—regarding the triggering event for a violation to arise under § 1692i(a)(2). *Compare Serna v. Law Office of Joseph Onwuteaka, PC*, No. H-11-CV-3034, 2012 WL 2360805, at *4 (S.D. Tex. June 19, 2012) (holding that the violation occurs at the filing of a pleading), *with Langendorfer v. Kaufman*, No. 1:10-CV-00797, 2011 WL 3682775, at *3 (S.D. Ohio Aug. 23, 2011) (holding that the violation occurs at the time of service). The Defendants maintain that the violation occurred on July 6, 2010—the day Onwuteaka *filed* his original petition in the Harris County Justice of the Peace Court, and, therefore, Serna's suit is untimely under § 1692k(d)'s one-year limitations period. Serna argues, however, that § 1692i(a)(2) is not violated until the debt collector files a pleading and the alleged debtor is served. Therefore, according to Serna, a violation of § 1692i(a)(2) did not occur until he received notice of the suit, thus necessitating a response, when he was served on August 14, 2010.

No. 12-20529

The magistrate judge adopted the Defendants' approach, concluding that "the statute of limitations under section 1692i(a)(2) begins to run upon the filing of the lawsuit in the improper forum." *See Serna*, 2012 WL 2360805, at \*4. In reaching this conclusion, the magistrate judge explained that "'[o]nce the debt collector sues in the wrong venue, the consumer must defend, and the damage is done.'" *Id.* (alteration in original) (quoting *Beeler–Lopez v. Dodeka, LLC*, 711 F. Supp. 2d 679, 681 (E.D. Tex. 2010)). While the magistrate judge's opinion is not an unreasonable interpretation of this term, we conclude for purposes of § 1692k(d) that a violation of § 1692i(a)(2) does not occur until a debtor is provided notice of the debt-collection suit.

## I.

As with any statutory interpretation, we first turn to the text because when a statute's language is plain we must enforce it according to its terms. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); *see also Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 5 (1985). Unfortunately, rather than use straightforward terms such as "file" or "file and provide notice"—which would clearly establish when a violation for purposes of § 1692k(d) arises under § 1692i(a)(2)—Congress elected to use the ambiguous phrase "bring such action." Although Black's Law Dictionary defines "bring an action" as to "sue" or "institute legal proceedings," the phrase "bring such action" does not have a plain meaning synonymous with filing a pleading.[7] *See* BLACK'S

---

[7] The dissenting opinion attempts to establish that "bring such action" has a plain meaning by relying primarily on definitions in Black's Law Dictionary. The dissenting opinion's purported plain-language definition of "bring such action," however, is not found simply by referencing a dictionary for the ordinary meaning of that phrase or by relying on the Federal Rules of Civil Procedure—neither source alone provides a precise definition of the phrase. Instead, the dissenting opinion's definition is derived through a four-part nesting of definitions: (1) "bring an action" is defined as to "sue" or "institute legal proceedings," (2) to "sue" is to institute a lawsuit against another, (3) "institute" is to commence, and (4) pursuant to Federal Rule of Civil Procedure 3, a civil action is commenced by filing a complaint with the court. The complicated nature of this approach demonstrates that "bring such action" does not have a plain meaning based on the text alone.

LAW DICTIONARY 219 (9th ed. 2009). For example, in the context of another statute, our sister circuit declined to hold that "bring an action" is synonymous with "commencing a suit." *See Bowles v. Am. Stores*, 139 F.2d 377, 378 (D.C. Cir. 1943). The court explained that while the phrase "bring an action" in other contexts may mean "commencing a suit," it does not follow that this phrase is necessarily limited to initiating an action. *Id.* The court concluded that in the context of the statute it was interpreting that a consumer's right to "bring an action" meant more than the right to merely commence an action. *Id.* at 378-79. Instead, the phrase provided a consumer the right to potentially recover a statutorily-provided monetary award from a merchant by prosecuting a suit to judgment. *Id.* at 379. *Bowles* illustrates that "bring such action" does not plainly mean "file a pleading."

The ambiguity in this phrase is further illustrated by Texas's treatment of the term "bring."[8] In Texas, bringing suit is not synonymous with filing a pleading. Instead, "[t]o 'bring suit,' a plaintiff must both file her action *and* have the defendant served with process."[9] *Boyattia v. Hinojosa*, 18 S.W.3d 729, 733 (Tex. App.—Dallas 2000, pet. denied); *see also Tarrant Cnty. v. Vandigriff*, 71 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied) ("The mere filing of a lawsuit is not sufficient to meet the requirements of 'bringing suit' within the

---

[8] Although Texas law carries no precedential value in the instant matter, we note Texas's separate treatment of the terms "bring" and "file" to underscore the ambiguity inherent in the term "bring such action."

[9] By way of example, the Texas Commission on Human Rights Act provides that an employee "may bring a civil action" against his or her employer within sixty days of receiving notice of a right to file such action. TEX. LAB. CODE ANN. § 21.254 (West 2011). "Texas courts have interpreted [this section] to mean that a plaintiff must file the suit and serve notice of the suit upon the proper parties within 60 days of receiving . . . notice of a right to sue." *McCollum v. Tex. Dep't of Licensing & Regulation*, 321 S.W.3d 58, 63 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

limitations period; rather, a plaintiff must *both* file her action *and* have the defendant served with process.").

Texas's distinction between filing a pleading and bringing suit also runs throughout the state's statutes, including one analogous to the statute at bar. For instance, several of Texas's statutes of limitations employ the phrase "bring suit," *see, e.g.*, TEX. CIV. PRAC. & REM. CODE ANN. §16.002 (West 2011), whereas the Texas Deceptive Trade Practices Act ("DTPA")—a statute with a similar purpose to the FDCPA—employs the term "filing suit" when referring to a violation for initiating a debt-collection action in the incorrect forum. TEX. BUS. & COM. CODE ANN. § 17.46(b)(23) (West 2011) (providing that a violation occurs based on "*filing suit* founded upon . . . extensions of credit . . . in any county other than in the county in which the defendant resides at the time of the commencement of the action or in the county in which the defendant in fact signed the contract" (emphasis added)).[10]

Therefore, based on the inherent ambiguity of this phrase we cannot conclude that "bring such action" has any plain meaning, much less that it is necessarily synonymous with simply filling a pleading. As it is used in the context of the FDCPA, this phrase could provide that a violation of § 1692i(a)(2) occurs at the time of merely filing a debt-collection action in the improper venue, but it could also mean that a violation occurs only after the debtor becomes aware of the suit such that the debtor is harmed by having to respond in a distant forum, thereby requiring filing and notice of the action. Because the phrase "bring such action" does not by itself carry a plain meaning, we must consider other sources to determine which approach best encapsulates Congress's intent. *See Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638, 642 (1990)

---

[10] The DTPA's two-year limitations period is supplemented by a discovery rule so it is not necessary to use a broader term than "file" in this statute. TEX. BUS. & COM. CODE ANN. § 17.565.

(providing that "where the language is not dispositive . . . [we must turn to] the history and purposes of the statutory scheme" to determine Congress's intent); *Custom Rail Employer Welfare Trust Fund v. Geeslin*, 491 F.3d 233, 236 (5th Cir. 2007) ("[W]hen the terms of a statute are ambiguous we are allowed to consider other sources that may shed light on the meaning of those terms.").

## II.

Faced with two potential interpretations of the ambiguous phrase "bring such action," the FDCPA's remedial nature compels the conclusion that a violation includes both filing and notice. Through the FDCPA, Congress sought to eliminate "abusive debt collection practices by debt collectors." *See* § 1692(e). Importantly, "Congress . . . has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and *clearly intended the FDCPA to have a broad remedial scope*." *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002) (emphasis added).[11] Here, the remedial nature of this statute is best served for purposes of § 1692k(d) by tying a violation of § 1692i(a)(2) to notice necessitating action because this approach: (1) most directly focuses on the harm Congress sought to remedy through the FDCPA, and (2) best preserves the availability of relief for consumers.

First, when a debt collector files suit against an alleged debtor in contravention of § 1692i(a)(2), no harm immediately occurs because the debtor likely has no knowledge of the suit and has no need to act. Therefore, tying a

---

[11] *See* S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698 ("In addition to [the] specific prohibitions, this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed."); *see also Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) ("Because the FDCPA is a remedial statute, we construe its language broadly, so as to effect its purpose" (citation omitted)); *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) ("Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer.").

violation to the mere filing of a complaint does not serve the statute's remedial purpose. Upon receiving notice, however, the harm is realized because the debtor must then respond in a distant forum or risk default. Because the harm of responding to a suit in a distant forum arises only after receiving notice of that suit, a "violation" does not arise under § 1692i(a)(2) until such time as the alleged debtor receives notice of the suit.

In adopting this approach, we are guided by the principle that a claim does not accrue for purposes of a statute of limitations until a plaintiff experiences an actual injury. *See Frame v. City of Arlington,* 657 F.3d 215, 238 (5th Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 1561 (2012). When a defendant's wrongful act does not coincide with the plaintiff's injury, the statute of limitations does not begin to run until the plaintiff is harmed. *Frame*, 657 F.3d at 238 (explaining that a plaintiff's disability claim accrued not when the defendant built an inaccessible sidewalk, but when the plaintiff became disabled and encountered the harm of not being able to use the sidewalk); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). Here, an alleged debtor does not suffer any injury until he becomes aware of a debt-collection suit and is forced to respond in a distant forum. Therefore, our holding that a debt collector does not violate § 1692i(a)(2) until the debtor receives notice of the debt-collection suit aligns with our well-settled precedent establishing that for purposes of a statute of limitations a claim does not accrue until the plaintiff suffers actual injury.

Second, concluding that a violation of the "bring such action" provision occurs solely upon the filing of a complaint creates a perverse incentive for unscrupulous debt collectors to file debt-collection actions and purposefully delay service, thereby depriving a debtor of the benefit of the FDCPA's short, one-year limitations period. *See Johnson v. Riddle*, 305 F.3d 1107, 1114 (10th Cir. 2002). Such a result frustrates the purpose of the FDCPA because it forces alleged debtors to scour court records in order to preserve their rights. The burden of

this obligation is especially apparent here: Serna had no reason to believe that while living in Bexar County he would be sued in Harris County on a $2600 promissory note that he signed over the Internet. Conversely, concluding that a violation does not occur with respect to § 1692i(a)(2) until, at the earliest, some form of notice has been provided ensures that a consumer has adequate opportunity to seek relief under the FDCPA.

Therefore, to the extent that there are two reasonable interpretations of when a violation of the "bring such action" language occurs, the remedial nature of the FDCPA and the importance of protecting consumers by allowing them to sue under § 1692k(d) compel us to conclude that a violation of § 1692i(a)(2) is not complete until the alleged debtor becomes aware of the debt-collection suit.[12]

### III.

Our conclusion that for purposes of § 1692k(d) a violation of § 1692i(a)(2) does not occur until an alleged debtor receives notice of the debt-collection suit is buttressed by an examination of the context in which § 1692i(a)(2) was adopted. *See Elam v. Kans. City S. Ry. Co.*, 635 F.3d 796, 810 (5th Cir. 2011) ("[W]hen the text of a statute is susceptible of more than one reasonable meaning, we may look to legislative history to discern legislative intent."). The origins of § 1692i(a)(2) can be traced to the Federal Trade Commission's ("FTC") fair-venue standards, which "provide[] that if a creditor sues a consumer for a delinquent account, the creditor may sue the consumer only in the judicial district in which the consumer resides at the beginning of the action or signed the contract sued upon." *In re J.C.Penney Co.*, No. 852-3029, 1986 WL 722090,

---

[12] Importantly, we need not and do not decide whether a discovery rule applies to § 1692k(d)'s one-year limitations period. Our conclusion that a violation under § 1692i(a)(2) arises only after the alleged debtor receives notice of the underlying debt-collection suit has no bearing on whether a discovery rule could toll § 1692k(d)'s one-year limitation for filing suit after a violation arises.

at *4 (F.T.C. July 17, 1986).[13] The FTC adopted these standards after observing that "[k]nowingly filing actions in distant counties in order to gain an unconscionable advantage [was] not a unique or isolated practice, but instead ha[d] been continuously identified . . . as a widespread and common abuse in the debt collection field." *In re Spiegel*, 1975 WL 173254, at *6.

Following the FTC's implementation of the fair-venue standards, Congress observed the importance of "address[ing] the problem of 'forum abuse,' an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear." S. Rep. No. 95-382, at 5, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699. To remedy this problem and prevent debt collectors from unfairly pursuing debt-collection actions against consumers in distant forums with the goal of receiving default judgments, Congress "adopt[ed] the 'fair venue standards' developed by the [FTC]." *Id.*

This background guides our analysis in two significant respects. First, in light of the earlier use of the terms "file" and "institute" in the Senate Report and FTC opinions, Congress's use of the phrase "bring such action" in § 1692i(a)(2) strongly suggests that Congress did not intend for this phrase simply to be equated with filing a pleading. Had Congress intended for a violation to have occurred merely by filing, it would have used the phrase "*file such action*"; instead, Congress declined to use the word "file" and selected instead to use the broader term "bring." Congress's decision to use the word "bring" rather than "file" demonstrates its intent that "bring such action"

---

[13]    *See also Dutton v. Wolhar*, 809 F. Supp. 1130, 1139 (D. Del. 1992) (explaining that the fair-venue standards "permit a debt collector to sue . . . on a debt only in the county in which the alleged debtor resides or signed the contract upon which the suit is premised." (emphasis removed)); *In re Spiegel, Inc.*, No. 8990, 1975 WL 173254, at *8 (F.T.C. Aug. 18, 1975) (explaining that the fair-venue standards "prohibit[] the institution of suits against a defendant other than where [the] defendant resides or where the contract sued upon was signed"), *enforced as modified*, *Spiegel Inc. v. FTC*, 540 F.2d 287 (7th Cir. 1976).

No. 12-20529

requires more than simply filing a pleading.[14] *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 433 n.12 (1987) (noting that there is a "strong presumption that Congress expresses its intent through the language it chooses").

Second, the fair-venue standards on which Congress relied did not seek to cure the harm of filing a suit *per se*, but rather addressed the hardship experienced by a debtor forced to respond to the suit in a distant forum.[15] Filing a pleading alone does not give rise to this hardship. Instead, it is upon receiving notice of a debt-collection suit that the alleged debtor experiences the harm the fair-venue standards sought to remedy because it is then that he must respond to the suit. Thus, the circumstances surrounding the FDCPA's adoption further compel us to conclude that for purposes of § 1692k(d) no violation of § 1692i(a)(2) occurs until the debtor is given notice of the debt-collection action.

## IV.

Today's holding aligns with the Tenth Circuit's decision in *Riddle* involving a suit brought pursuant to § 1692k(d) for a violation of 15 U.S.C. § 1692f(1) of the FDCPA, a separate section from that at issue here. *See* 305 F.3d at 1111. The court in *Riddle* rejected the "argument that the violation [based on an underlying debt-collection suit] occurred upon filing rather than upon service." *Id.* at 1113. Observing that "the fact that a party that has

---

[14] As the dissenting opinion points out, the Senate Report also states that "[w]hen an action is against real property, it must be *brought* where such property is located." *See* S. Rep. No. 95-382, at 5, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699 (emphasis added). This use of the term "brought" does not somehow undercut the significance of Congress's decision to also use the term "bring" in § 1692i(a)(2).

[15] *See, e.g.*, *In re Speigel*, 1975 WL 173254, at \*15 (explaining that the opportunity to defend "is totally foreclosed by [the debt collector's] use of [a distant] forum, which forces the consumer who wishes to defend to appear in a courtroom hundreds or thousands of miles from home, at a cost in travel alone which may exceed the amount in controversy"); *In re Montgomery Ward*, No. C-2602, 1974 WL 175300, at \*1-3 (F.T.C. Nov. 19, 1974) (explaining that the harm committed by the retailer was that its pursuit of a debt-collection action in a distant forum "effectively deprive[d] many defendants of a reasonable opportunity to appear, answer and defend").

committed half an actionable wrong [and] is likely to commit the other half cannot suffice to create a complete and present cause of action," *id.* at 1114, the court concluded that "where the plaintiff's FDCPA claim arises from the instigation of a debt collection suit, the plaintiff does not have a complete and present cause of action . . . and thus no violation occurs within the meaning of § 1692k(d), until the plaintiff has been served." *Id.* at 1113 (internal quotation marks omitted); *cf. Mattson v. U.S. W. Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992) (noting that an FDCPA violation based on a collection letter occurs at the time of mailing, rather than the time of receipt, because the debt collector's "last opportunity to comply with the FDCPA" passed when it mailed the collection letters). Although *Riddle* addressed § 1692f(1)—a section of the FDCPA that involves violations based on inappropriate debt-collection suits, but does not use the phrase "bring such action"—its reasoning applies generally to claims under the FDCPA for violations arising from the institution of debt-collection suits. *See Riddle*, 305 F.3d at 1113. As a result, *Riddle*'s conclusion that a violation of the FDCPA does not occur based on a wrongful debt-collection suit until the alleged debtor is served strongly supports our conclusion that for purposes of § 1692k(d), a violation under § 1692i(a)(2) does not arise until the alleged debtor receives notice.[16]

---

[16]   The Ninth Circuit has also considered when the FDCPA's one-year limitations period begins to run with regard to a debt-collection suit, but its analysis arises in a context that differs significantly from the present case. *See Naas v. Stolman*, 130 F.3d 892 (9th Cir. 1997). The *Naas* court did not evaluate the effect of service on a debtor, but instead focused on whether the limitations period began to run only after a state court of appeals upheld the judgment in the underlying debt-collection suit. *Id.* at 892-93. While the Ninth Circuit noted that the one-year limitation "beg[i]n[s] to run on the filing of the complaint," the date of service was irrelevant to its narrow holding that an appellate court's affirmation of an underlying debt-collection judgment did not trigger the limitations period. *Id.* at 893.

Notably, the court relied on the Eighth Circuit's test in *Mattson*, which determines when a cause of action accrues under the FDCPA based on both the debt collector's "last opportunity to comply with the FDCPA" and a point "fixed by objective and visible standards, one which is easy to determine, ascertainable by both parties, and may be easily applied." *Mattson*, 967 F.2d at 261 (internal quotation marks omitted); *see also Naas*, 130 F.3d at 893

No. 12-20529

## V.

Concluding that for purposes of § 1692k(d) a violation of § 1692i(a)(2) could not have occurred until Serna became aware of Onwuteaka's debt-collection suit when he was served,[17] we now consider whether Serna's suit was timely.  The FDCPA's limitations period provides that Serna's FDCPA action "may be brought . . . within one year from the date on which [Onwuteaka's alleged violation of § 1692i(a)(2)] occur[ed]."  *See* § 1692k(d).  Because the date of the violation itself is not included in calculating the limitations period, Onwuteaka argues that (assuming August 14 was the trigger date) Serna would have been required to file his complaint by August 14, 2011; however, because that date was a Sunday, his limitations period expired on August 15, 2011.  *See* FED. R. CIV. P. 6(a)(1)(A), (C).  Serna filed his original complaint and IFP application on August 12, 2011, but the district court denied his IFP application on August 15, 2011, within the limitations period alternatively argued by Onwuteaka.  The court provided notice to Serna of its denial of the IFP application by mail and electronic means, thereby entitling him to three days to file his complaint and filing fee.  *See* FED. R. CIV. P. 6(d) ("When a party may . . . act within a specified time after service . . . 3 days are added after the period would otherwise expire under Rule 6(a)."); *see also Jarrett v. US Sprint Commc'ns Co.*, 22 F.3d 256, 259 (10th Cir. 1994) (providing three additional days under Rule 6(d) to file suit and

---

(discussing the *Mattson* test).  When applied in a context where service is relevant, the *Mattson* test suggests that a violation of § 1692i(a)(2) does not arise until the debtor is served because service is both the debt collector's last opportunity to comply with the FDCPA and occurs on a date that is easily ascertainable by the parties.  While the filing of suit represents an opportunity to comply with the FDCPA, it is not the debt collector's *last* opportunity before the alleged debtor becomes aware of and suffers the injury of having to respond to the debt collector's violation of the FDCPA.  Accordingly, our approach here does not conflict with the Ninth Circuit's holding in *Naas*, which did not address the effect of service on the debtor.

[17]  The parties do not contest that Serna became aware of Onwuteaka's suit through service.  As a result, we need not decide whether in the absence of service, other means of notice would establish a violation under § 1692i(a)(2).

14

pay the filing fee following the denial of an IFP petition); *Castleberry v. CitiFinancial Mortg. Co.*, 230 F. App'x 352, 356-57 (5th Cir. 2007) (unpublished) (explaining that Rule 6(d) may extend the period for action after receiving notice of a court's order when an action must be taken by a certain time after service). In other words, Serna could have acted by refiling and paying his filing fee the same day his IFP application was denied because his time to act under § 1692k(d)'s one-year limitation continued through August 15, 2011. Because Rule 6(d) provided Serna three additional days, his filing on August 18, 2011, was timely.[18] Accordingly, we conclude that Onwuteaka's argument that Serna's suit was untimely based on § 1692k(d)'s one-year limitations period as he calculates it fails.

The dissenting opinion argues that we should apply our analysis of § 1692i(a)(2) to the word "brought" in § 1692k(d) such that Serna would be required to have given notice of suit by this date. Onwuteaka did not make this argument to the district court or this court, and we decline to reach an argument not raised by any party. *See United States v. Bigler*, 817 F.2d 1139, 1140 (5th Cir. 1987) ("This court has repeatedly ruled that it will not consider issues that were not raised before the trial court, and, *a fortiori*, that it will not consider issues that are not raised by the litigants on appeal except when they undermine

---

[18] Because we conclude that Serna's suit was timely filed, we need not reach the issue of whether the FDCPA's limitations period is tolled during the pendency of an unsuccessful IFP application. This consideration—as well as any consideration of whether a discovery rule applies to § 1692k(d)—would require us to determine whether the FDCPA's one-year limitations period functions as a jurisdictional bar or a statute of limitations. *See Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008); *cf. Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998) ("If the one-year filing period [in a statute] is a limitation on the jurisdiction of federal courts, then federal courts lack the power to extend the period to allow for late adjudication of claims. . . . [I]f the [one-year filing] period is a statute of limitations, courts can, in extraordinary circumstances, allow late claims to proceed[.]"). While some courts have concluded that the FDCPA's limitations period is not jurisdictional, *see, e.g.*, *Mangum v. Action Collection Serv.*, 575 F.3d 935, 939-40 (9th Cir. 2009), we decline to reach this issue.

No. 12-20529

the court's jurisdiction."). We have no occasion to opine on the meaning of § 1692k(d)'s use of the term "brought" under the arguments raised by the parties.[19]

## CONCLUSION

The FDCPA provides that a debtor may bring an action "within one year from the date on which the violation occurs." § 1692k(d). We conclude that a violation of § 1692i(a)(2) does not occur until the debt-collection suit is filed and the alleged debtor is notified of the suit.[20] Therefore, Serna's action was timely.

REVERSED and REMANDED.

---

[19] Moreover, while there is a presumption that identical terms within the same statute will be interpreted similarly, the Supreme Court has "declined to require uniformity when resolving ambiguities in identical statutory terms." *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 575 (2007). As a result, even if we were to interpret § 1692k(d)'s use of the term "brought," we may not necessarily adopt an identical meaning to "bring such action" because "[t]here is . . . no effectively irrebuttable presumption that the same defined term in different provisions of the same statute must be interpreted identically. Context counts." *See id.* at 575-76 (internal citation and quotation marks omitted) (explaining that the "natural presumption that identical words used in different parts of the same act are intended to have the same meaning . . . *is not rigid and readily yields* whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent. A given term in the same statute may take on distinct characters from association with distinct statutory objects calling for different implementation strategies." (alteration in original) (emphasis added) (internal citation and quotation marks omitted)).

[20] Because our interpretation of § 1692i(a)(2)'s ambiguous reference to "bring such action" is intimately tied to Congress's intent in adopting the FDCPA and the purpose for which this statute was adopted, our holding does not necessarily extend to the interpretation of this phrase as it is used in other statutes.

16

No. 12-20529

JERRY E. SMITH, Circuit Judge, dissenting:

In the majority's view, to "bring such action," 15 U.S.C. § 1692i(a)(2), refers to something different from "[a]n action . . . may be brought," *id.* § 1692k(d). At first blush, that notion is counterintuitive; on careful examination, it is demonstrable error: Those nearly identical phrases are found in the same act and should be given the same meaning. I respectfully dissent.

I.

A.

To interpret "bring such action," we ought to begin, "[a]s in any statutory construction case[,] . . . with the statutory text, and proceed from the understanding that [u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."[1] "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (quotation marks and citation omitted). "[T]he meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991).

The dictionary defines to "bring an action" as to "sue" or "institute legal proceedings." BLACK'S LAW DICTIONARY 219 (9th ed. 2009). To "sue" is "[t]o institute a lawsuit against (another party)," *id.* at 1570, and to "institute" is, in turn "[t]o begin or start; commence," *id.* at 868. Thus, "[a] suit is brought when in law it is commenced, . . . the two words evidently mean the same thing, and are used

---

[1] *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013) (quotation marks and citation omitted; second alteration in original); *accord Ford Motor Credit Co. v. Dale (In re Dale)*, 582 F.3d 568, 573 (5th Cir. 2009) (Haynes, J.) (observing that we begin with "the plain language of the statute," then consult the "ordinary or generally understood meaning").

No. 12-20529

interchangeably." *Goldenberg v. Murphy*, 108 U.S. 162, 163 (1883).

In the context of federal law, a suit is brought or commenced when it is filed. Under the Federal Rules of Civil Procedure, for example, "[a] civil action is commenced by filing a complaint with the court." FED. R. CIV. P. 3.[2] Because of Rule 3, "[i]n a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations." *Henderson v. United States*, 517 U.S. 654, 657 n.2 (1996).

When a "cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been 'commenced' in compliance with Rule 3 within the borrowed period." *West v. Conrail*, 481 U.S. 35, 39 (1987). That is so even where the statute from which the limitations period was borrowed *requires service* within the limitations period. *Id.* at 38. Not surprisingly, many federal statutes use "file" and "bring" interchangeably,[3] distinguish bringing suit from serving process,[4] or both.[5]

---

[2] The original Advisory Committee debated whether a suit should be commenced by filing or, instead, filing plus something else; "[a]t one time a majority of the Committee favored the so-called 'hip-pocket' method of commencing an action, and the proposed text of what is now Rule 3 provided that an action would be commenced by the service of process." 4 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1051, at 209 (3d ed. 2002). Others proposed that an action would commence upon filing, "but with a further provision that the action should abate unless service was made within sixty days." *Id.* The committee settled on the current language, *id.*, which has not been amended except for stylistic purposes.

[3] *See, e.g.*, 12 U.S.C. § 4617(5) ("(A) In general[,] [i]f the Agency is appointed conservator or receiver under this section, the regulated entity may, within 30 days of such appointment, *bring an action* in the United States district court . . . . (B) Upon the *filing of an action* under subparagraph (A) . . . .") (emphasis added); 21 U.S.C. § 355(D)(i) ("*Filing* of civil action[:] . . . [T]he applicant referred to in such subclause may . . . *bring* a civil action . . . .") (emphasis added).

[4] *See, e.g.*, 7 U.S.C. § 25(c) ("Any such action shall be brought not later than two years after the date the cause of action arises. . . . Process in such action may be served in any judicial district . . . ."); 15 U.S.C. § 5712(c) ("Any civil action brought under this section . . . may
(continued...)

18

No. 12-20529

B.

The panel majority has no difficulty interpreting "[a]n action . . . may be brought," § 1692k(d), according to its ordinary meaning under federal law. The majority correctly notes that Serna "filed" his complaint on August 12, 2011, then "refiled" it on August 18. Considering whether Serna's suit was timely, the majority uses "bring suit" and "file suit" interchangeably:

> The FDCPA's limitations period provides that Serna's FDCPA action "may be brought . . . within one year from the date on which [Onwuteaka's alleged violation of § 1692i(a)(2)] occur[red]. *See* § 1692k(d). Because the date of the violation itself is not included in calculating the limitations period, Onwuteaka argues that (assuming August 14 was the trigger date) Serna would have been required to *file* his complaint by August 14, 2011; however, because that date was a Sunday, his limitations period expired on August 15, 2011. *See* FED. R. CIV. P. 6(a)(1)(A), (C). Serna *filed* his original complaint and IFP application on August 12, 2011 . . . . Because Rule 6(d) provided Serna three additional days, his *filing* on August 18, 2011, was timely.

(Emphasis added, first ellipses in original.)

"Absent some congressional indication to the contrary, we decline to give the same term in the same Act a different meaning depending on whether the rights of the plaintiff or the defendant are at issue." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003). Indeed, "[t]he normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860

---

[4] (...continued)
be brought in the district wherein the defendant is found . . . *and process* in such cases *may be served* in any district . . . .") (emphasis added).

[5] *See* 18 U.S.C. § 1956(b)(2) ("For purposes of adjudicating an action filed . . . the district courts shall have jurisdiction over any foreign person . . . against whom the action is brought, if service of process upon the foreign person is made . . . .").

No. 12-20529

(1986) (quotation marks and citations omitted).  Nothing in the text or context of the FDCPA indicates that to "bring an action" should be interpreted one way in § 1692k(d) and another way in § 1692i(a)(2).

By any reasonable reading of the rules of statutory construction, the terms should be given the same meaning.  Because Serna sued more than a year after Onwuteaka did, Serna's action was untimely.

## II.

Rather than confront the text of the statute directly, the majority relies on canons of construction and legislative history.  But "Fifth Circuit law is crystal clear that when, as here, the language of a statute is unambiguous, this [c]ourt has no need to and will not defer to extrinsic aids or legislative history." *Guilzon v. Comm'r*, 985 F.2d 819, 823 (5th Cir. 1993); *accord Hamilton v. United Health-care of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002). "Because the plain language of the statute is unambiguous, we need not examine the legislative history." *Conway v. United States*, 647 F.3d 228, 236 (5th Cir. 2011) (Haynes, J.)  "Bring such action" could be ambiguous in some other context—in some jurisdictions an action is "brought" when filed and in others is "brought" when process is served.[6] But "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994).  In the broader context of federal law, and in the narrower context of the FDCPA, "bring such action" is not ambiguous.

Instead of identifying an ambiguity in the text or context of the statute, the majority relies on our sister circuit's construction of a different phrase—

---

[6] *Compare, e.g.*, LA. CODE CIV. PROC. ANN. art. 421 ("A civil action is a demand for the enforcement of a legal right.  It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction."), *with, e.g.*, MINN. R. CIV. P. 3.01(a) ("A civil action is commenced against each defendant: (a) when the summons is served upon that defendant.").

"attempt to collect"[7] —from a separate section of the statute, 15 U.S.C. § 1692f.[8] Regardless of the remedial nature of the statute, however,[9] the majority has not shown ambiguity and cannot show absurdity.[10]

---

[7] *Johnson v. Riddle*, 305 F.3d 1107, 1114 (10th Cir. 2002).

[8] Even if *Johnson v. Riddle* were on point, its reasoning does not, in the majority's words, "strongly support[]" its holding. The *Johnson v. Riddle* court, 305 F.3d at 1113, held that "the plaintiff does not have a complete and present cause of action, and thus no violation occurs within the meaning of § 1692k(d), until the plaintiff has been served." "[T]he fact that a party that has committed half an actionable wrong," filing suit, "is likely to commit the other half," serving process, "cannot suffice to create a complete and present cause of action." *Id.* at 1114. But nothing in the text of § 1692i(a) divides "bring such action" into two halves of an actionable wrong. Claiming, as the majority does in following *Johnson v. Riddle*, that the plaintiff does not have a complete and present cause of action until notified begs the question whether the relevant violation is filing or filing plus something more.

As did the *Johnson v. Riddle* court, *id.* at 1114 n.4, the majority pretends that its approach does not conflict with *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997). Because no federal court of appeals had answered "at which point the statute of limitations begins to run when the alleged violation of the Act is the filing of a lawsuit," the Ninth Circuit considered two district court opinions. *Id.* In one, "the court held that the violation occurred and the statute of limitations started to run on *either the day the complaint was filed or the day it was served*, but deciding between the two alternatives was unnecessary in that case." *Id.* (citing *Prade v. Jackson & Kelly*, 941 F. Supp. 596, 600 (N.D. W. Va. 1996)) (emphasis added). In the other, the court was "*more precise*, holding that the statute of limitations began to run from the day garnishment proceedings were initiated." *Id.* (citing *Blakemore v. Pekay*, 895 F. Supp. 972, 982–83 (N.D. Ill. 1995)) (emphasis added).

The Ninth Circuit thus considered the possibility that limitations began to run on service, but it stated its holding in precise terms: Where "the alleged violation of the Act was . . . the bringing of the suit itself . . . the statute of limitations began to run on the filing of the complaint." *Id.* Because the Ninth Circuit was not construing § 1692i(a), the majority technically may not be creating a circuit split, but there is a conflict between the two approaches.

The majority's invocation of *Mattson v. U.S. West Communications, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992), is a red herring. However useful the Eighth Circuit's test might be in determining when, exactly, a debt collector violated the ambiguous provisions of § 1692e or § 1692f, it is irrelevant to the question of when a debt collector brought an action in a distant forum.

[9] *Hamilton*, 310 F.3d at 392.

[10] That unscrupulous debt collectors might cut into the statute of limitations by delaying service might justify applying a discovery rule or equitable tolling but not a finding of
(continued...)

No. 12-20529

"In the absence of ambiguity, our inquiry ends with the text itself. . . . [A]bsent any indication that doing so would frustrate Congress's clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it." *Hamilton*, 310 F.3d at 391–92 (citation omitted; alteration in original). The plain meaning of the statute—as written and not as annotated by the panel majority—should be invoked to render Serna's suit untimely.

## III.

Spelunking unnecessarily in the depths of legislative history, the majority loses its way.[11] It acknowledges that the FTC consistently faulted debt collectors for "filing" or "instituting" suits in distant fora and that § 1692i(a)(2) "addresses the problem of 'forum abuse,' an unfair practice in which debt collectors *file suit* against consumers in courts which are so distant or inconvenient that consumers are unable to appear," S. Rep. No. 95-382, at 5, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699 (emphasis added). As described in that Senate Report, the bill adopted "the 'fair venue standards' developed by the [FTC]. A debt collector who *files suit* must do so either where the consumer resides or where the underlying contract was signed. When an action is against real property, it must be *brought* where such property is located." *Id.* (emphasis added).

There is no great mystery here; taken at face value, the legislative history indicates that Congress intended to codify the FTC's rule against filing suit in a distant forum, so it prohibited bringing suit in a distant forum—a synonymous

---

[10] (...continued)
absurdity.

[11] The majority's approach to statutory interpretation is odd to say the least. Usually, "[t]he starting point in discerning congressional intent is the existing statutory text and not the predecessor statutes." *Lamie*, 540 U.S. at 534. Without demonstrating an ambiguity in the text of the statute—a prerequisite for considering legislative history—the majority attempts to create a mystery by comparing the statutory text not even with a predecessor statute, but *with the legislative history*.

term under federal law. *Contra* the majority, "bring" is not a broader term than "file" under federal law; the very Senate Report on which the majority relies uses them interchangeably.

Even if there were some uncertainty as to why Congress used "bring such action" instead of "file such action," it is easily explained. Perhaps Congress wanted to use the same term for the same thing in different sections of the same Act. *Compare* 15 U.S.C. § 1692i(a)(2), *with* 15 U.S.C. § 1692k(d). Or maybe Congress wanted to use a standard phrase found throughout the United States Code.[12] In any event, the legislative history of the FDCPA supports the plain meaning of § 1692i(a)(2); Serna's suit was untimely.[13]

Because the majority distinguishes that which Congress has made the same, I respectfully dissent.

---

[12] *See, e.g.*, 15 U.S.C. § 2619 ("Any civil action . . . shall be brought . . . action brought . . . shall be brought . . . suits brought . . . action brought . . . action brought . . . actions brought . . . action is brought."); *see also supra* notes 3–5. Interpreting these other statutes, must we see whether the legislative history used "file" before we conclude that "bring" and "file" are synonyms?

[13] Finally, I am baffled by the majority's digression into Texas law. We do not usually interpret the terms of federal statutes by seeing how they are used in one particular state's laws. If the point is that Texas distinguishes between filing a pleading and bringing suit, what relevance does that distinction have here? The terms are interchangeable under federal law, as the majority implicitly acknowledges when interpreting and applying § 1692k(d).