[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11826

Non-Argument Calendar

_____

DENNIS DELIA,

                                                    Plaintiff-Appellant,

*versus*

DITECH FINANCIAL, LLC, et al.,

                                                    Defendants,

NEWREZ, LLC,
d.b.a. Shellpoint Mortgage Servicing,

                                                    Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-00842-WWB-DCI

———————————————

Before ROSENBAUM, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Dennis Delia alleges that the servicer of his mortgage loan, Newrez, LLC, doing business as Shellpoint Mortgage Servicing ("Shellpoint"), violated the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. §§ 1692–1692p, when it introduced evidence in a state foreclosure lawsuit that misrepresented "the character, amount, or legal status" of his debts, *see id*. § 1692e. The district court found that this litigation conduct was simply a continuation of the foreclosure case, so it was not independently actionable under the FDCPA. As a result, the court determined that Delia's complaint was time barred because it was not filed within one year of the initiation of the foreclosure action. *See id*. § 1692k(d). After careful review, we affirm.

**I.**

In June 2005, Delia executed a promissory note and mortgage upon refinancing the purchase of his home. In 2006, a prior foreclosure action was brought. Ditech Financial LLC began servicing the loan in 2013, while litigation remained ongoing. Ditech later settled that action with Delia and agreed to pay his attorney's

fees.  Not long after, Delia sued Ditech under the FDCPA, alleging that Ditech was attempting to collect from him the attorney's fees it had paid to Delia's counsel by intentionally mislabeling the fees as "corporate advance fees" in its billing statements.  That case settled as well.

In June 2019, Ditech sent Delia a notice of default, advising that he was in default for failure to make any payments since 2012. The notice stated that Ditech would bring a foreclosure action unless Delia timely cured the default of $241,205.15, which included an "Escrow Advance Balance" of $65,421.84.  This notice of default was required under paragraph 22 of the mortgage as a condition precedent to bringing a foreclosure suit.

Delia did not cure the default as demanded, so Ditech filed another foreclosure action in state court in August 2019.  Meanwhile, in December 2019, Ditech transferred servicing of Delia's mortgage loan to Shellpoint, which substituted for Ditech as plaintiff in the foreclosure case.

The foreclosure complaint sought recovery of $198,194.20 in principal, plus unspecified amounts of interest, attorney's fees, escrow advances (for taxes and insurance), and other expenses.  In December 2019, Delia answered the complaint and asserted affirmative defenses, including that the notice of default vastly overstated the escrow deficiency.  Delia alleged that the notice of default improperly double-billed escrow and included various non-escrow items in escrow, including "attorney's fees and costs incurred in prior litigation between the parties."  For instance, the answer

noted that Ditech's corporate representative had testified in a November 2019 deposition that the escrow balance in the notice of default included foreclosure attorney's fees and court costs of $20,477.57.

In October 2020, in the foreclosure case, Shellpoint submitted an affidavit from its designated representative, Justin Mitchell, which was supported by a "Web History" for Delia's account and the notice of default. Mitchell asserted in the affidavit that the Escrow Advance Balance in the notice of default "consist[ed] entirely of taxes and insurance," and did not include any attorney's fees. That was inaccurate, however, as Mitchell later admitted at a deposition in March 2021. In particular, Mitchell admitted that the escrow balance reflected in the notice of default and web history both double-billed for taxes and insurance and mislabeled attorney's fees and other non-escrow items as escrow.

## II.

In May 2021, while Shellpoint's foreclosure case was pending, Delia sued Shellpoint in federal district court under the FDCPA based on its representative's affidavit and deposition testimony. After multiple amendments, Delia filed the operative third amended complaint in August 2022, alleging two counts under the FDCPA. Count I alleged that the affidavit misrepresented the character, amount, or legal status of the debt, in violation of 15 U.S.C. § 1692e(2), through double-billing and the inclusion of attorney's fees and other non-escrow costs. Count II asserted a similar claim in relation to the deposition testimony.

Shellpoint moved to dismiss on several grounds, including that Delia lacked standing and that his claims were barred by the applicable statute of limitations. Both parties submitted records from the underlying state case.

The district court granted the motion to dismiss in part and dismissed the action. While the court found that Delia had standing based on his allegations of emotional distress, it agreed with Shellpoint that his "claims are barred by the statute of limitations." The court reasoned that the representations in Mitchell's affidavit and deposition testimony were made in furtherance of the foreclosure action, "rather than constituting a new and separate debt collection activity." As a result, according to the court, the limitations period was measured from initiation of the foreclosure action. The court rejected Delia's argument that the statute of limitations did not begin to run until he learned that Shellpoint was misrepresenting the escrow deficiency, stating that the FDCPA does not contain a "discovery rule" for limitations purposes. Delia appeals.

## III.

We review *de novo* an order granting a motion to dismiss on statute-of-limitations grounds, accepting the allegations in the complaint as true and construing all reasonable inferences in the plaintiff's favor. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## IV.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692(e). To

accomplish that goal, the FDCPA "impos[es] affirmative require-ments on debt collectors and prohibit[s] a range of debt-collection practices." *Rotkiske v. Klemm*, 589 U.S. __, 140 S. Ct. 355, 358 (2019).

Among other things, the FDCPA broadly prohibits a debt collector from using "any false, deceptive, or misleading represen-tations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Conduct constituting a violation includes "[t]he false representation of . . . the character, amount, or legal status of any debt." *Id.* §1692e(2).

An action to enforce the FDCPA must be filed "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995). "That language unambiguously sets the date of the violation as the event that starts the one-year limitations period." *Rotkiske*, 140 S. Ct. at 360. So "absent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the viola-tion is discovered." *Id.* at 358.

Delia identifies the FDCPA violation at issue as the Mitchell affidavit and supporting documentation in October 2020. That af-fidavit, according to Delia, falsely stated that the Escrow Advance Balance in the notice of default "consist[ed] entirely of taxes and insurance," and did not include any attorney's fees, thereby mis-representing "the character, amount, or legal status of any debt" under § 1692e(2). While Delia also relies on Mitchell's subsequent deposition testimony in March 2021, he claims that the deposition

simply "reveal[ed]" the falsity of the affidavit and its supporting documentation, not that the testimony itself was false. Because there is no "discovery rule" generally applicable in FDCPA cases, the date Delia discovered the alleged violation does not matter for the statute of limitations. *See Rotkiske*, 140 S. Ct. at 358.

Thus, the limitations issue hinges on whether the introduction of the Mitchell affidavit in October 2020 constitutes the occurrence of an FDCPA violation. If so, Delia's complaint, filed within one year of the affidavit, is timely. And if not, then not.

## A.

We have not previously addressed in a published opinion what actions trigger the statute of limitations for an FDCPA claim when the alleged violation occurs within the context of a debt-collection lawsuit. The Supreme Court has confirmed that the FDCPA applies to conduct "in litigation." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). Yet the Court cautioned that the FDCPA should not be construed to prevent the communications and representations "inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Id.* at 296. At the same time, as the Sixth Circuit has observed, we should not adopt an approach that permits debt collectors to violate the FDCPA "with impunity" during litigation "so long as a debtor does not initiate suit within one year of the first violation[.]" *Bouye v. Bruce*, 61 F.4th 485, 493 (6th Cir. 2023).

In short, "[t]here is a difference between litigating a case and committing affirmative FDCPA violations during that litigation."

*Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1042 (9th Cir. 2023)
And "some litigation acts may constitute independent FDCPA vio-
lations." *Id.* at 1041. This is a "fact-sensitive inquiry that requires
a case-by-case approach," *id.* at 1044, with the focus "on the debt
collector's actions," *id.* at 1042; *see Hemmingsen v. Messerli & Kramer,
P.A.*, 674 F.3d 814, 819 (8th Cir. 2012) ("[T]he diverse situations in
which potential FDCPA claims may arise during the course of liti-
gation, and the Supreme Court's caution in *Heintz* . . . counsel
against anything other than a case-by-case approach.").

The parties largely agree on the framework to determine
whether mid-litigation conduct constitutes a "discrete" or "inde-
pendent" FDCPA violation triggering its own limitations period,
even if they disagree how it applies in this case. As outlined by the
Sixth and Ninth Circuits in *Bouye* and *Brown*, respectively, no dis-
crete FDCPA violation arises where the defendant simply "reaf-
firm[s] the legitimacy of the state suit throughout the litigation."
*Bouye*, 61 F.4th at 493. Thus, "standard litigation events that rea-
sonably follow the commencement of a lawsuit" ordinarily "are
not independent FDCPA violations." *Brown*, 73 F.4th at 1044.

But if the debt collector "does more than simply reaffirm the
legitimacy of the state suit," that conduct may constitute a discrete
FDCPA violation with its own limitations period. *Id.* (cleaned up).
In *Bouye*, for example, the Sixth Circuit held that a discrete FDCPA
violation plausibly occurred where the debt collector allegedly doc-
tored evidence mid-litigation to falsely reflect an assignment of a
debt. *See* 61 F.4th at 488, 491. Similarly, in *Brown*, the Ninth Circuit

found a discrete FDCPA violation where debt collectors offered an affidavit that "presented a new basis—not contained in the complaint—to show that [they] owned the debts." 73 F.4th at 1044. By shifting their basis for asserting ownership mid-litigation, the debt collectors "did more than 'reaffirm' the original complaint," the court stated.[1] *Id.*

## B.

We assume without deciding that this general framework, on which both parties rely, is correct. Nevertheless, nothing in the record suggests that Shellpoint did "more than simply reaffirm the legitimacy of the state [foreclosure] suit" when it introduced the affidavit of its representative Mitchell in October 2020. *See Brown*, 73 F.4th at 1044.

Contrary to Delia's claim, Mitchell's affidavit did not contain any "new or unique misrepresentations" not embodied in the original complaint. In the affidavit, Mitchell merely reaffirmed the escrow numbers reflected in both the notice of default—a condition

---

[1] While the Eighth Circuit's decision in *Demarais v. Gurstel Chargo, P.A.*, contains some broader language, its holding is consistent with *Bouye* and *Brown*. *See* 869 F.3d 685 (8th Cir. 2017). In *Demarais*, the Eighth Circuit found a discrete FDCPA violation based on a debt-collector law firm's request for a continuance on the date of trial, where the debtor plausibly alleged that the continuance was not sought for ordinary litigation purposes, but rather was part of a pattern of falsely threatening to go to trial with no intention of ever proving the case. *See id.* at 689–90, 694–96. By falsely threatening trial as a debt-collection maneuver, the law firm did "more than simply reaffirm the legitimacy of the state suit." *Brown*, 73 F.4th at 1044.

precedent to the state foreclosure lawsuit—and a payment history document that, according to Mitchell's deposition testimony, was created by the prior servicer, Ditech.  In fact, it appears Delia's counsel asked a Ditech representative about these same documents during a November 2019 deposition, which confirmed Delia's suspicion that the escrow balance included attorney's fees, and which formed the basis for a detailed challenge to the notice of default's figures in Delia's December 2019 answer.  Delia offers no support for his claim that Shellpoint doctored the payment history after the lawsuit was filed, as in *Bouye*, or presented a new basis for relief, as in *Brown*.  *See Bouye*, 61 F.4th at 488, 491; *Brown*, 73 F.4th at 1044.

Because the litigation conduct challenged by Delia involved no more than reaffirming the legitimacy of the foreclosure suit, this conduct is not independently actionable under the FDCPA.  Thus, the one-year limitations period began to run from either filing or service of that lawsuit.  *See, e.g.*, *Brown*, 73 F.4th at 1045–46; *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445–46 (5th Cir. 2013); *Johnson v. Riddle*, 305 F.3d 1107, 1113–14 (10th Cir. 2002).  Either way, Delia's May 2021 complaint was filed well over one year from the initiation of the foreclosure case in August 2019.  Accordingly, the district court properly dismissed this FDCPA action as time barred.

## V.

One further issue warrants mention.  Shellpoint contends that Delia lacked standing to bring an independent FDCPA claim based on Mitchell's affidavit and deposition testimony in the

foreclosure case. The district court rejected that argument, reasoning that Delia's alleged "pain and suffering and mental anguish" were sufficient to establish an injury in fact at the motion-to-dismiss stage.

Before "reaching the merits" of an appeal, we must ensure the plaintiff has "Article III standing." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020). "We look to three elements to determine whether a plaintiff has standing to sue: (1) injury in fact, (2) causation, and (3) redressability." *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1112 (11th Cir. 2021).

Here, Shellpoint does not dispute that Delia has standing to sue Shellpoint under the FDCPA for bringing a foreclosure action that misrepresented and overstated his debts. Rather, Shellpoint's arguments on standing relate to the Mitchell affidavit and deposition specifically. As we just explained, though, these matters were simply a reaffirmation of the legitimacy of the lawsuit, and so are considered part and parcel of that earlier, time-barred potential violation. Accordingly, we need not independently consider whether Delia established standing to sue solely in relation to Shellpoint's mid-litigation conduct.

## VI.

In sum, we affirm the district court's judgment dismissing Delia's FDCPA action as barred by the statute of limitations. *See* 15 U.S.C. § 1692k(d).

**AFFIRMED.**