### Tia BROWN, Plaintiff,

v.

### R & B CORPORATION OF VIRGINIA, d/b/a Credit Control Corporation, Defendant.

### Civil No.: 2:17cv107

United States District Court, E.D. Virginia, Norfolk Division.

Filed 07/28/2017

Aryeh E. Stein, for Plaintiff.

Mark R. Colombell, for Defendants.

## OPINION AND ORDER

Mark S. Davis, UNITED STATES DISTRICT JUDGE

This matter is before the Court on a motion to dismiss filed by R & B Corporation of Virginia, doing business as Credit Control Corporation ("Defendant"), pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] ECF No. 5. For the reasons set forth below, Defendant's motion to dismiss is DENIED.

## I. FACTUAL AND PROCEDURAL HISTORY

On February 20, 2017, Plaintiff Tia Brown ("Plaintiff") filed a single-count complaint, alleging that Defendant had violated multiple provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq.[2] Compl. ¶ 3, ECF No. 1. According to Plaintiff, at some point better known to Defendant, Defendant began to collect "alleged" consumer debt that Plaintiff originally owed to Cox Communications. Id. ¶ 7–8. Defendant reported the alleged debt to credit reporting

agencies, which was then reflected on Plaintiff's credit report. Id. ¶ 10. Plaintiff alleges that this communication was subject to the reporting requirements of the FDCPA, id. ¶ 9, and explains that:

11. Plaintiff disputed the Alleged Debt directly with the Defendant with a dispute letter on November 3, 2016.

12. Plaintiff examined her credit report again on January 22, 2017, and found that Defendant had re-reported the Alleged Debt on Plaintiff's credit report in January of 2017. When Defendant re-reported the Alleged Debt after it had notice of Plaintiff's dispute, it did not list the account as "disputed by consumer" despite being required to do so by the FDCPA.

13. As a result of Defendant's improper debt collection practices described above, Plaintiff has been damaged.

Id. ¶ 11–13. Based upon these facts and because "Defendant's debt collection efforts attempted and/or directed towards Plaintiff violate various provisions of the

---

1. Notwithstanding Defendant's representation that it challenges Plaintiff's standing both facially and factually, because Defendant is challenging Plaintiff's complaint on the ground that it alleges "nothing more than a 'bare procedural violation' of the FDCPA," and therefore Plaintiff has not sufficiently alleged an injury-in-fact sufficient for standing, the Court understands Defendant to be bringing a facial challenge to Plaintiff's standing. Def.'s Opening Br. 2, ECF No. 6. In a facial challenge, "the Plaintiff ... is afforded the same procedural protection as [s]he would receive under a Rule 12(b)(6) consideration.... [T]he facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (2009)(internal quotations and citations omitted). Thus, the facts recited here are drawn from the complaint and are assumed true for the purpose of deciding the motion currently before the Court. They are not considered factual

findings for any purpose other than consideration of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

2. Plaintiff brought her claim against a debt collector under the FDCPA, a statute designed to protect consumers from "abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The Court notes that factual scenarios somewhat similar to that presented here have also been brought under the Fair Credit Reporting Act ("FCRA"), a statute intended to "ensure fair and accurate credit reporting" by credit reporting agencies, and the Court will reference some such cases in its analysis below. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) (citing 84 Stat. 1128, 15 U.S.C. § 1681).

FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 16926(10), and 1692f," Plaintiff alleges that she "has been damaged and is entitled to damages in accordance with the FDCPA." Id. ¶ 15–16.

On March 21, 2017, Defendant filed an answer to the complaint, ECF No. 4, filed a motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), ECF No. 5, and filed a memorandum in support of the motion to dismiss, ECF No. 6. Relying on the United States Supreme Court's decision in Spokeo, Inc. v. Robins, —— U.S. ——, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), Defendant requests that this Court dismiss Plaintiff's complaint because the Court does not have subject-matter jurisdiction due to Plaintiff's lack of standing. Def.'s Opening Br. 1, ECF No. 6. Plaintiff failed to file a timely response.[3]

On April 5, 2017, Defendant filed a reply to the motion to dismiss, arguing that as "[t]he party invoking federal jurisdiction [Plaintiff] bears the burden of establishing standing," and by Plaintiff's failure "to respond to the Motion to Dismiss, she has failed to meet her burden to establish standing." Def.'s Reply Br. 2, ECF No. 8. Defendant asks the Court to dismiss Plaintiff's complaint with prejudice for lack of subject-matter jurisdiction. Id. On April 7, 2017, Plaintiff filed a motion for extension of time to file a response to Defendant's motion to dismiss. ECF No. 9. On April 10, 2017, Defendant filed a response in opposition to the motion for extension of time, ECF No. 10, and on May 4, 2017, the Court denied Plaintiff's motion for extension of time for the reasons stated in Defendant's response to the motion for extension of time, ECF No. 11. Thus, having

been fully briefed, Defendant's motion to dismiss is ripe for review.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Pursuant to Article III of the Constitution, federal courts have subject-matter jurisdiction over "Cases" and "Controversies." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). One component of the case or controversy limitation on jurisdiction is standing, which requires the plaintiff to " 'allege [ ] such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction." Summers v. Earth Island Inst., 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)) (emphasis in original). "The standing requirement stems from Article III, . . . [and] is a threshold jurisdictional question" that ensures a lawsuit is "appropriate for the exercise of the [federal] courts' judicial powers." Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 343 (4th Cir. 2017) (quoting Pye v. United States, 269 F.3d 459, 466 (4th Cir. 2001)) (alteration in original). Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant challenging standing may move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When such a motion is filed, "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

In order to demonstrate standing, at the "irreducible constitutional mini-

---

**3.** Pursuant to Local Civil Rule 7(F)(1), Plaintiff had fourteen (14) calendar days to file her response from the date she was served with Defendant's motion to dismiss. E.D. Va. Loc. Civ. R. 7(F)(1). Thus, Plaintiff's deadline was April 4, 2017.

mum,"[4] a plaintiff must show: (1) an injury-in fact, (2) a causal connection between the injury and the alleged misconduct, and (3) a likelihood that the injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560–61, 112 S.Ct. 2130. To demonstrate an injury-in-fact, a plaintiff must show "an invasion of a legally protected interest" that is (1) "actual or imminent," (2) "particularized" to the plaintiff, and (3) "concrete." Spokeo, Inc., v. Robins, ─── U.S. ───, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560, 112 S.Ct. 2130).

The "actual or imminent" component of the injury-in-fact element of standing requires that the invasion of a plaintiff's legally protected interest (i.e. a violation of a plaintiff's substantive rights) has either already occurred or is "certainly impending." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013); see also Bock v. Pressler & Pressler, LLP, No. CV11-7593KMSCM, 254 F.Supp.3d 724, 731–32, 2017 WL 2304643, at *5 (D.N.J. May 25, 2017) (explaining that substantive rights are the basis of standing). The violation of plaintiff's substantive rights must not be "conjectural or hypothetical," Lujan, 504 U.S. at 560, 112 S.Ct. 2130, because mere

"[a] negations of possible future injury are not sufficient," Clapper, 133 S.Ct. at 1147 (internal quotation marks omitted) (emphasis and alteration in original). Next, to demonstrate the particularization component of the injury-in-fact element of standing, the plaintiff must show that the violation of plaintiff's rights "affect[ed] the plaintiff in a personal and individual way." Spokeo, 136 S.Ct. at 1548 (internal quotations omitted).

Finally, to be "concrete," and satisfy the final component of the injury-in-fact element of standing, the violation of plaintiff's substantive rights "must be 'de facto'; that is, it must actually exist." Id.[5] (citing Black's Law Dictionary 479 (9th ed. 2009)). A concrete injury is "real," not "abstract." Id. (citing Webster's Third New International Dictionary 472 (1971)). However, a concrete injury, while "real," may nevertheless be "intangible." See generally Pleasant Grove City, Utah. v. Summum, 555 U.S. 460, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009) (free speech); Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (free exercise). An intangible injury (1) may result in actual harm that produces an adverse effect on the plaintiff, see Ben–Davies v. Blibaum & Assocs., P.A.,

4. The doctrine of standing encompasses both "prudential" considerations and "constitutional" requirements. Prudential considerations are "judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc., ─── U.S. ───, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014). Unlike the self-imposed pruden-

tial considerations of standing, the "irreducible constitutional minimum" requirements of standing are "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan, 504 U.S. at 560, 112 S.Ct. 2130.

5. In an unpublished opinion, the Fourth Circuit applied the Supreme Court's Spokeo FCRA standing analysis in the context of a FDCPA standing analysis. Ben–Davies v. Blibaum & Assocs., P.A., No. 16-2188, 695 Fed. Appx. 674, 675, 2017 WL 2378920, at *1 (4th Cir. June 1, 2017). Thus, the Court looks to the standing analysis in Spokeo for guidance in this FDCPA case.

No. 16-2188, 695 Fed.Appx. 674, 676, 2017 WL 2378920, at *2 (4th Cir. June 1, 2017) (finding that the plaintiff had alleged "actually existing intangible harms" by alleging that she suffered 'emotional distress, anger, and frustration'), (2) may carry a "risk of real harm" to a substantive right, see Spokeo, 136 S.Ct. at 1549 (explaining that an injury with a "risk of real harm" may be sufficiently concrete in situations when harm may be "difficult to prove or measure," such as actions for libel or slander per se), or (3) may present no real likelihood of an adverse effect, see Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 346 (4th Cir. 2017) (holding that because a violation of a statute "had no practical effect" there was no concrete injury). When a plaintiff alleges an actual intangible injury such as emotional distress, a plaintiff has sufficiently alleged a concrete intangible injury. Ben–Davies, 695 Fed. Appx. at 675–77, 2017 WL 2378920, at *2. However, when a plaintiff alleges an intangible injury without any real likelihood of an "adverse effect," such as the examples given by the Supreme Court in Spokeo of reporting an incorrect zip code "without anything more," or a credit reporting agency failing to provide a required notice to a consumer when the consumer information itself was "entirely accurate," the plaintiff has not sufficiently alleged a concrete injury for standing. Spokeo, 136 S.Ct. at 1549 (observing that "a bare procedural violation, divorced from any concrete harm" is not sufficient for standing).

 In between these two possibilities (actual intangible harm and no likelihood of harm) are situations in which an intangible injury, such as the violation of a statutory right, causes no actual harm but nevertheless carries an inherent "risk of real harm."[6] Courts employ two methods to determine whether an intangible injury with a "risk of real harm" is sufficiently concrete: (1) historical analysis and (2) Congressional intent analysis. Spokeo, 136 S.Ct. at 1549. A statutory violation that creates an intangible injury with a "risk of real harm" may satisfy the concreteness requirement if (1) the injury is an injury for which "the law has long permitted recovery" (historical analysis), such as the common law torts of libel or slander per se, or (2) the injury is a "violation of a procedural right" that Congress granted in order to protect a substantive right (Con-

6. The Court does not find Beck v. McDonald, 848 F.3d 262 (4th Cir. 2017), cert. denied sub nom. Beck v. Shulkin, No. 16-1328, —— U.S. ——, 137 S.Ct. 2307, 198 L.Ed.2d 728, 2017 WL 1740442 (U.S. June 26, 2017), applicable with regard to the standard for determining the risk of an intangible concrete injury because the Beck court analyzed risk under the "actual or imminent" component of standing. In Beck, the Fourth Circuit considered whether the plaintiffs' allegation of a risk of future identity theft was sufficient to show an imminent threat of injury. Id. at 274. Based upon the Supreme Court's analysis of "actual or imminent" injury in Clapper, the Beck court declined to "engage with the same 'attenuated chain of possibilities' rejected by the Court in Clapper." Id. at 275 (citing Clapper, 133 S.Ct. at 1147–48). Moreover, the Beck court explicitly noted that "Spokeo is not controlling [in this case]" because the plaintiffs did not allege that the statutory violations alone constituted an injury-in-fact, but rather alleged a "threatened injury" theory of standing based upon possible future theft of their identities. Id. at 271 & n.4; cf. Coleman v. Charlottesville Bureau of Credits, Inc., No. 3:17CV147-HEH, 2017 WL 1381666, at *4 (E.D. Va. Apr. 17, 2017) (finding that plaintiff "attempted to make similarly speculative claims in her response brief on standing" to the plaintiff in Beck, but "has pleaded no facts in her Complaint to support any reasonable inference that she faces an impending risk of actual harm"). In summary, the "actual or imminent" risk analysis considers whether the violation has actually occurred or is "certainly impending," while the concreteness risk analysis evaluates whether, after a violation has occurred, there is a risk of real harm to a plaintiff's legally protected interest as a result of a violation.

gressional intent analysis). Id. With respect to the second of these alternatives, a procedural violation creates a concrete intangible injury when (1) Congress granted a procedural right in order to protect a substantive right, and (2) the violation of that procedural right itself presents a "risk of real harm" to the substantive right. See id. ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified."); Summers, 555 U.S. at 496, 129 S.Ct. 1142 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create Article III standing."). For example, in Federal Election Commission v. Akins, 524 U.S. 11, 20–25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998), and Public Citizen v. U.S. Department of Justice, 491 U.S. 440, 449, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989), the violation alone of a procedural right to information granted by Congress constituted a sufficiently concrete injury for standing. Spokeo, 136 S.Ct. at 1549–50. In summary, a procedural violation that presents a "risk of real harm" to a substantive right may be sufficient, without any other alleged injury, to show concrete injury for purposes of standing. However, a "bare" procedural violation that is essentially harmless because it presents no risk of harm to a substantive right is not sufficient to demonstrate a concrete injury.

### B. Fair Debt Collection Practices Act

Congress enacted the FDCPA to protect consumers from "abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e); United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 135 (4th Cir. 1996). A "debt collector" is "any person ... who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Id. § 1692a(5). Finally, a "consumer" is "any natural person obligated or allegedly obligated to pay any debt." Id. § 1692a(3).

The FDCPA grants debtors the right to be free from debt collectors using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Id. § 1692e; see Bock, 254 F.Supp.3d at 732, 2017 WL 2304643, at *6 ("[T]he protection that section 1692e provides to shield debtors, or alleged debtors, from a debt collector's use of 'any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt,' is [a] substantive [right]."). Specific conduct that violates this section includes a debt collector making a false representation as to "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2), or a debt collector "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," id. § 1692e(8).

A debt collector is liable for any failure to comply with any provision of the FDCPA for "any actual damage sustained," statutory damages up to $1000, and costs and reasonable attorney's fees. Id. § 1692k(a). To obtain statutory damages, a plaintiff is not required to show any actual damage. Id.; see Salvati v. Deutsche Bank Nat. Trust Co., N.A., 575 Fed.Appx. 49, 56 (3d Cir. 2014) ("[U]nder

the FDCPA, a plaintiff may collect statutory damages even if he has suffered no actual damages." (citing Federal Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 513 (6th Cir. 2007), and Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307 (2d Cir. 2003))).

## III. DISCUSSION

 Defendant argues that Plaintiff's complaint should be dismissed for lack of subject-matter jurisdiction because Plaintiff did not allege a concrete injury-in-fact sufficient to establish standing. The Court notes that because Plaintiff failed to timely file a response to Defendant's motion to dismiss, Plaintiff, as the party bearing the burden to demonstrate subject-matter jurisdiction, has not asserted any arguments in response to Defendant's argument regarding Plaintiff's lack of standing.

In a single-count complaint, Plaintiff alleged that she has been damaged "[a]s a result of Defendant's improper debt collection practices" in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692e(10), and 1692f. Compl. ¶¶ 13, 15–16. According to Plaintiff, she disputed a debt with Defendant, but Defendant failed to report the debt as disputed, a specific procedural violation of 15 U.S.C. § 1692e(8), and more generally a violation of 15 U.S.C. § 1692e (prohibiting broadly "any false, deceptive, or misleading representation" in the collection of a debt), § 1692e(2) (prohibiting the "false representation" of the "legal status of any debt"), § 1692e(10) (prohibiting the "use of any false representation or deceptive means to collect or attempt to collect any debt"), and § 1692f (prohibiting "unfair or unconscionable" debt collection). Id. ¶ 11–12. Aside from Defendant's alleged procedural violation in failing to properly report the disputed debt, Plaintiff does not further articulate any tangible harm that she has suffered. Instead, Plaintiff appears to allege that she suffered an intangible injury by virtue of the procedural violation alone. Thus, the Court must evaluate whether Plaintiff's assertion that Defendant violated her right to have her debt accurately reported is sufficient to demonstrate a concrete injury. As explained above, a statutory violation that creates an intangible injury with a "risk of real harm" may satisfy the concreteness component of the injury-in-fact element of standing if (1) the injury is an injury for which "the law has long permitted recovery" (historical analysis), or (2) the injury is a "violation of a procedural right" that Congress granted in order to protect a substantive right (Congressional intent analysis). Spokeo, 136 S.Ct. at 1549.

### A. Rights Historically Recognized by Law

While English common law recognized the importance of regulating debt collection practices at least as far back as the Magna Carta in 1215, see Magna Carta, Art. 9, The British Library (1215), https://www.bl.uk/collection-items/magna-carta-1215 (protecting debtors from seizure of land or rent in payment of a debt "so long as the debtor has movable goods sufficient to discharge the debt"), much of English common law was designed to "benefit creditors" instead of debtors, Cent. Virginia Cmty. Coll. v. Katz, 546 U.S. 356, 373–74, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006) (describing historic English bankruptcy law as "chiefly a measure designed to benefit creditors," with bankruptcy commissioners permitted to arrest the debtor, break down the doors to his home, and seize and collect the debtor's assets); see Sturges v. Crowninshield, 17 U.S. 122, 151, 4 Wheat. 122, 4 L.Ed. 529 (1819) (explaining that England "anxiously guards the rights of creditors"). And while historic common law made it a crime to obtain goods or money "by false pretense," 2 Joel

Prentiss Bishop, Commentaries on the Criminal Law 226 (6th ed. 1877), such prohibition did not apply to false statements made to recover "debt already due, because no injury is done," id. at 256; State v. Hurst, 11 W.Va. 54, 71–72 (1877) (looking at history of English and American law and concluding that, while undoubtedly "immoral," nevertheless, "a man cannot be held guilty of procuring money by false pretenses, with intent to defraud, who has merely collected a debt justly due him, though in making the collection he has used false pretenses"); Rex v. Williams, 173 Eng. Rep. 158, 158 (1836) (Coleridge, J.) (directing the jury to find the defendant "not guilty" if they believed that the defendant "did not intend to defraud," but only intended "to put it in his master's power to compel him to pay a just debt"). Thus, unlike common law actions such as slander per se, it does not appear that "the law has long permitted recovery" for making false statements in the collection of a debt. Consequently, a false statement, such as inaccurately reporting a disputed debt, cannot satisfy the concreteness component of the injury in fact element of standing under the historical method of analyzing the concreteness of intangible injuries. The Court therefore moves on to the alternative method of evaluating the concreteness of intangible injuries for purposes of standing: Congressional intent.

## B. Rights Granted by Congress

■ In situations in which the law has not historically permitted recovery, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" Spokeo, 136 S.Ct. at 1549 (quoting Lujan, 504 U.S. at 578, 112 S.Ct. 2130). When Congress chooses to recognize a concrete injury, a procedural violation alone may "give rise to a case or controversy where none existed before" if the violation itself creates a "risk of real harm" to the substantive right granted by Congress. Id. (internal quotations omitted). Here, in analyzing whether the alleged procedural violation (Defendant's failure to accurately report Plaintiff's debt as disputed) presents a "risk of real harm" to a protected interest, the Court must determine (1) whether Congress granted a procedural right in order to protect a substantive right, and (2) whether the violation of that procedural right itself presents a "risk of real harm" to the substantive right. See Spokeo, 136 S.Ct. at 1549–50.

### 1. Substantive Right

By enacting the FDCPA, Congress intended to protect consumers from "abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Stated differently, Congress granted consumers a substantive right in being free from "abusive debt collection practices." Id.; see also Irvine v. I. C. Sys., 198 F.Supp.3d 1232, 1236 (D. Colo. 2016) ("Through the FDCPA, Congress created statutory legal rights to be free from certain abusive debt collection practices." (citing Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002))). To accomplish this objective, Congress specifically defined several abusive debt collection practices that consumers had a right to be free from, including being free from debt collectors disseminating "false, deceptive, or misleading" information, such as "fail[ing] to communicate that a disputed debt is disputed." Id. § 1692e(8); see Biber v. Pioneer Credit Recovery, Inc., 229 F.Supp.3d 457, 468 (E.D. Va. 2017) ("[A plaintiff] plausibly suffers a concrete, particularized harm to a legally protected interest when a debt collector's false, deceptive, or misleading representations could detrimentally affect [plaintiff's] decision-making with respect to his debt."). Thus, the Court finds that Congress granted to Plaintiff a, such as false,

deceptive, or misleading representations regarding Plaintiff's debt.

Next, the Court considers whether Congress intended to protect Plaintiff's substantive right in being free from abusive debt collection practices through the procedural requirement that a debt collector not disseminate "false, deceptive, or misleading" information, such as failing to report a disputed debt as disputed. The Court is persuaded that the FDCPA language makes clear that Congress specifically intended that this procedural requirement–the prohibition against debt collectors inaccurately reporting disputed debt–would protect Plaintiff's substantive right in being free from abusive debt collection practices. See Sayles v. Advanced Recovery Sys. Inc., 206 F.Supp.3d 1210, 1213 (S.D. Miss. 2016) ("Congress intended this provision [1692e(8)] of the FDCPA to address the dissemination of false information and abusive practices employed by debt collectors. Plaintiff's alleged injury [of disputed debt improperly reported] is more than a bare procedural violation, it is the very type of injury Congress sought to eradicate and thus [Congress] created a right of action to protect consumers." (emphasis added)). Thus, the Court finds that the FDCPA's procedural requirement that debt collectors accurately report disputed debt as disputed was intended to protect Plaintiff's substantive right in being free from abusive debt collection practices.

### 2. "Risk of Real Harm"

Finally, the Court must determine whether a violation of the FDCPA's procedural requirement that debt collectors report a disputed debt as disputed presents a "risk of real harm" to Plaintiff's substantive right in being free from abusive debt collection practices. Unlike a harmless error in reporting an incorrect zip code or a failure to provide a required notice despite otherwise accurate reporting, Spokeo, 136

S.Ct. at 1550, a disputed debt that a debt collector fails to report as "disputed" may significantly affect a consumer's credit report. See Bowse v. Portfolio Recovery Assocs., LLC, 218 F.Supp.3d 745, 749 (N.D. Ill. 2016) ("The risk of injury that § 1692e(8) addresses is the risk of substantial financial harm caused by an inaccurate credit rating."); Paz v. Portfolio Recovery Assocs., LLC, No. 15 C 5073, 2016 WL 6833932, at *2 (N.D. Ill. Nov. 21, 2016) ("The reason for these broad protections [in § 1692e(8)] is because an incomplete credit disclosure creates the risk of an inaccurate credit rating .... [which] creates a substantial risk of harm."). Fundamentally, "[t]he presence of inaccurate information on one's credit record poses a readily apparent risk of harm, because it may lead other creditors or potential creditors to take adverse action or decline to offer credit." Evans v. Portfolio Recovery Assocs., LLC, No. 15 C 4498, 2016 WL 6833930, at *3 (N.D. Ill. Nov. 20, 2016); see Saunders v. Branch Banking & Trust Co., 526 F.3d 142, 150 (4th Cir. 2008) (holding, in the context of a FCRA violation, that a jury could find that a consumer's credit score was negatively influenced by the failure to list a debt as "disputed" because evidence was presented that when a credit reporting agency received notice of a dispute, it "records the dispute in the credit report and does not include the derogatory information in assessing the credit score"). Thus, the Court finds that a violation of the FDCPA's procedural requirement that debt collectors accurately report a disputed debt as disputed presents a "risk of real harm" to Plaintiff's substantive right in being free from abusive debt collection practices.

In summary, the Court finds while the law may not have "long permitted recovery" for false statements in the collection of debt, Congress specifically granted

consumers the substantive right of being free from abusive debt collection practices, including the dissemination of false information regarding the consumer's debt. In order to protect this substantive right, Congress enacted the FDCPA's procedural requirement that debt collectors accurately report a disputed debt as disputed. A violation of this procedural requirement presents a "risk of real harm" to Plaintiff's substantive right of being free from abusive debt collection practices, and Congress granted consumers the right to vindicate this right. Thus, by alleging that she disputed the debt and alleging that Defendant failed to accurately report the disputed debt as disputed, Plaintiff has sufficiently alleged a violation of a procedural right that has a "risk of real harm"–thereby alleging a concrete injury for purposes of standing.[7] Having alleged a concrete injury that, if proven, would be sufficient to allow Plaintiff to recover statutory damages, this Court finds that Plaintiff has standing to bring this suit, and DENIES Defendant's motion to dismiss on this basis.[8]

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **DENIED.** ECF No. 5. The Clerk is **REQUESTED** to send a copy of this Opinion and Order to counsel of record for the parties.

**IT IS SO ORDERED.**

---

7. The Court also notes that, while not argued by Plaintiff, Defendant has nevertheless failed to explain how its argument that Plaintiff failed to allege a concrete injury through solely alleging a statutory violation of the FDCPA is synthesized with the FDCPA's provision authorizing statutory damages in the absence of Plaintiff showing any actual harm. Other courts to analyze this have concluded that, in a similar FDCPA context, requiring a plaintiff to "plead actual damages to confer standing would run afoul of the [FDCPA's] statutory damages scheme itself." See e.g., Allah–Mensah v. Law Office of Patrick M. Connelly, P.C., No. CV PX-16-1053, 2016 WL 6803775, at *8 (D. Md. Nov. 17, 2016) (citing 15 U.S.C. § 1692k(a)(2)(A)).

8. The Court recognizes that another court within this same district recently reached a contrary conclusion in a similar case. See Coleman v. Charlottesville Bureau of Credits, Inc., No. 3:17CV147-HEH, 2017 WL 1381666, at *2 (E.D. Va. Apr. 17, 2017). This is a close case because the development of the Spokeo concrete injury analysis is still in its infancy, and the Plaintiff's complaint is very brief. However, as stated in the above analysis, the Court is persuaded, based upon the unique facts and specific statutory provision at issue in this case, that Plaintiff has sufficiently alleged a concrete injury that meets the threshold requirement of standing.